UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| SHAUN STEELE, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | 1:10-cv-556- SEB-TAB |
| ) | |
| JAMES WYNN, STANLEY KNIGHT, ) | |
| RIAN CLINTON, and JAMES D. HURST, ) | |
| ) | |
| Defendants. ) | |

### ENTRY GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
(Docket No. 38)

This case arises out of Plaintiff's 2003 conviction for the crimes of burglary and escape and involves Plaintiff's claim that the defendants, all employees or former employees of the Indiana Department of Correction, held him in prison 471 days longer than the term of incarceration imposed by the sentencing court, thereby violating his Eighth Amendment right to be free from cruel and unusual punishment and his Fourteenth Amendment right to due process. It is now before the Court on Defendants' Motion for Summary Judgment.[1]

### I. FACTUAL BACKGROUND

The facts of this case are simple and straightforward. On or about May 29, 2002, the Jasper County Prosecutor filed criminal charges against Plaintiff. [Chronological Case Summary (Dkt. No. 47-1).] Pending trial, Plaintiff was taken into custody. [Id.] From June 3, 2002 through July 2, 2002, he was held at the Jasper County Jail (a period of 29 actual days). [Id.] At the request of the Jasper County Sheriff, he was transferred to the custody of the Indiana Department of Correction

---

[1] Also before the Court is Defendants' Motion to Strike Plaintiff's Surreply. [Dkt. No. 50.] That motion is DENIED.

(IDOC) for "safekeeping."[2] [Id.] Plaintiff was then detained within the IDOC from July 3, 2002 through September 17, 2003 (a period of 442 actual days). [Id.]

On September 17, 2003, the Jasper Circuit Court sentenced Plaintiff to a total of nine years in prison. [Sept.17, 2003 Order at 1 (Dkt. No. 1-1).] In its sentencing order, the Jasper Circuit Court stated:

> [T]he Defendant claims that he should be give[n] 469 days credit for time spent in confinement while awaiting the trial of this cause, together with good time credit resulting therefrom. However[,] the Court defers the same to the Indiana Department of Correction for determination as to actual credit due.

[Id., at 3 (emphasis added).] Consistent with the sentencing order, the Jasper Circuit Court's Abstract of Judgment read:

> Def[endant] claims 469 days credit for time spent in confinement while awaiting the trial of this cause, together with good time credit. Court defers same to Indiana Department of Correction for determination.

[Wynn Aff., Ex. A (emphasis added).]

Notwithstanding the language in both the Order and the Abstract of Judgment, the IDOC did not determine either the actual number of days that Plaintiff spent in confinement or the number of days of "good time credit" that he had earned prior to his sentencing.[3] [Nov. 18, 2009 Order (Dkt. No. 1-2); Clinton Aff. (Dkt. No. 38-2); Hurst Aff. (Dkt. No. 38-3); Knight Aff. (Dkt. No. 38-4); Wynn Aff.] As a result, Plaintiff's release date was incorrectly calculated, and Plaintiff was not

---

[2] A pretrial detainee may be held within the Indiana Department of Correction for "safekeeping" if it is determined that holding him in the county jail poses some kind of safety or security risk. [Wynn Aff. ¶ 11 (Dkt. No. 38-5).]

[3] In Indiana, both pretrial detainees and convicted prisoners are afforded the opportunity to have their sentences reduced for good behavior while in custody. Ind. Code § 35-50-6-3.

released from prison until February 22, 2007 – a date that was 471 days *later* than the date on which he should have been released.  [Nov. 18, 2009 Order; Plaintiff's Dep., p. 35, l. 4 - 36, l. 4 (Dkt. No. 38-1).]

On November 18, 2009, the Jasper Circuit Court issued an order granting Defendant's Petition for Post Conviction Relief.[4]  The order stated:

> [Plaintiff] should be given credit for a total of 471 actual days served prior to sentencing in this cause, together with good time credit, of the same applies . . . [T]he Abstract of Judgement previously entered in this cause shall be amended to reflect that the Defendant is given credit for a total of 471 days served prior to sentencing in this cause.[5]

[Nov. 18, 2009 Order at 2.]

Having obtained the order on his Petition for Post Conviction Relief, Plaintiff filed this action.[6]  [Complaint (Dkt. No.1).]

Plaintiff named Rian Clinton as a defendant because Clinton was the IDOC Classification Specialist who first met with Plaintiff upon his arrival at the IDOC after sentencing by the Jasper Circuit Court.  [First Amended Complaint ¶ 8 (Dkt. No. 30); Clinton Aff.]  Clinton reviewed the Jasper Circuit Court's sentencing documents and observed that they directed the IDOC to calculate Plaintiff's credit for time served prior to sentencing together with any good time credit earned, but Clinton did not calculate that credit. [Clinton Aff. ¶¶ 7 - 10, 13.]  Instead, he calculated Plaintiff's

---

[4] The date on which Plaintiff filed his Motion for Post Conviction Relief is not part of the record before us.

[5] Of course, by the time this order was issued, Plaintiff had already served the entirety of his sentence plus an additional 471 days.

[6] Plaintiff filed this action on May 10, 2010, a date more than 7 years after his sentencing and more than 3 years after he was released from prison.  Defendants have not, however, moved for summary judgment on the basis of any statute of limitations defenses.

projected release date without applying any credit, told Plaintiff that he could not perform the calculation, faxed the sentencing documents to his supervisor, and suggested that Plaintiff contact his criminal defense attorney or the Jasper Circuit Court regarding his credit time. [Id. ¶¶ 12 - 14, Ex. A at 1.]

Plaintiff named James Hurst as a defendant because Hurst, another IDOC Classification Specialist, also reviewed the Jasper Circuit Court's sentencing documents. Hurst, like Clinton, observed that the relevant sentencing documents directed IDOC to calculate Plaintiff's pre-sentence credit time, but Hurst did not calculate that time. [First Amended Complaint ¶ 9; Hurst Aff.]

Plaintiff named Stanley Knight as a defendant because at all times relevant to Plaintiff's claims in this action, Knight was the Superintendent of the IDOC's Miami Correctional Facility, where Plaintiff was housed. [First Amended Complaint ¶ 6.] Plaintiff wrote a letter to Knight requesting credit for the time he served in custody prior to his sentencing in accordance with the order issued by the Jasper Circuit Court. However, according to Plaintiff, Knight never responded. [Plaintiff's Dep., p. 15, l. 13 - 16, l. 24.]

Finally, Plaintiff named James Wynn as a defendant because at all times relevant to Plaintiff's claims in this action, Wynn was IDOC's Director of Classification. [First Amended Complaint ¶ 5.] Plaintiff also wrote a letter to Wynn requesting that IDOC give him credit for the time he served in custody prior to his sentencing, but no action was taken in response to that letter. [Plaintiff's Dep., p. 16, l. 24 - 17, l. 7.][7]

---

[7] Plaintiff also named IDOC employees Bret Mize and Keith Clanton as defendants, but they have since been dismissed from this action. [Order on May 18, 2011, Pretrial Conference (Dkt. No. 31).]

## II.  STANDARD OF REVIEW

Summary judgment is appropriate when the record shows that there is "no genuine issue as to any material fact and the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).   Summary judgment is not a substitute for a trial on the merits, nor is it a vehicle for resolving factual disputes.  Waldridge v. Am. Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994).  Therefore, after drawing all reasonable inferences from the facts in favor of the non-movant, if genuine doubts remain and a reasonable fact-finder could find for the party opposing the motion, summary judgment is inappropriate.  See Shields Enters. v. First Chi. Corp., 975 F.2d 1290, 1294 (7th Cir. 1992); Wolf v. City of Fitchburg, 870 F.2d 1327, 1330 (7th Cir. 1989).

## III.  LEGAL ANALYSIS

### A. Plaintiff's Fourteenth Amendment claim

Plaintiff asserts that by holding him in prison 471 days longer than the sentence imposed by the Jasper Circuit Court, the defendants falsely imprisoned him and subjected him to cruel and unusual punishment in violation of both the Eighth and the Fourteenth Amendments of the United States Constitution.  [First Amended Complaint ¶¶ 23 - 24 (Dkt. No. 30).]  We can quickly dispose of Plaintiff's Fourteenth Amendment claim.

The United States Supreme Court has held that "if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of [Fourteenth Amendment] substantive due process."  United States v. Lanier, 520 U.S. 259, 272 n.7 (1997).  "Applying that principle, courts have held that there is no sustainable substantive due process claim in the alternative to a claim governed under the Eighth Amendment."  Graham v.

5

Poole, 476 F. Supp. 2d 257, 261 (W.D.N.Y. 2007) (internal quotations omitted). Because Plaintiff's false imprisonment and cruel and unusual punishment claims in this action are "covered" by the more specific provisions of the Eighth Amendment, they may be appropriately analyzed under the Eighth Amendment. In fact, Plaintiff appears to concede this point, as he did not in any way address the Fourteenth Amendment in his response to Defendants' summary judgment motion.

### B. Plaintiff's Eighth Amendment claim

"[I]ncarceration after the time specified in a sentence has expired violates the Eighth Amendment's proscription against cruel and unusual punishment if it is the product of deliberate indifference." Burke v. Johnston, 452 F.3d 665, 667 (7th Cir. 2006). Although the Seventh Circuit Court of Appeals has not addressed the elements of a deliberate indifference claim in the context of a delayed release from prison, it has referenced with seeming approval the three-part test employed by the Third Circuit Court of Appeals, which requires a plaintiff to establish that: (1) "a prison official knew of the prisoner's problem and thus of the risk that unwarranted punishment was being inflicted[;]" (2) the prison official "either failed to act or took only ineffectual action under the circumstances[;]" and (3) "a causal connection between the official's response to the problem and the unjustified detention." Id. (citing Moore v. Tartler, 986 F.2d 682, 686 (3d Cir. 1993)).

### 1. Defendants' Indiana law arguments are unavailing

Defendants assert that Plaintiff cannot prevail on his Eighth Amendment claim as a matter of law because under Indiana law, IDOC had no authority to calculate Plaintiff's credit. They observe that in Robinson v. State, 805 N.E.2d 783, 789 (Ind. 2004), the Indiana Supreme Court held that Indiana Code § 35-38-3-2 requires a sentencing court to "include both the amount of time spent by a defendant prior to the imposition of sentence and also the amount of credit time earned in accordance with the defendant's credit class" in the judgment of conviction. Accordingly, they

6

argue that under Indiana Code § 35-38-3-2, as interpreted by Robinson, the Jasper Circuit Court was *required* to provide IDOC with the amount of credit to which Plaintiff was entitled and that IDOC was actually *prohibited* from calculating that credit. In other words, they contend that they cannot be deliberately indifferent for not doing something that the law prohibited them from doing.

Plaintiff rejoins that it is disingenuous for Defendants to claim that IDOC could not have calculated his credit time, particularly when: (1) he had been held at IDOC for "safekeeping" prior to his sentence; (2) IDOC itself would have been the entity to determine whether his behavior while in IDOC custody qualified for "good time credit;" and (3) IDOC clearly had access to its own records. Plaintiff further asserts that when he was sentenced on September 17, 2003, Robinson, which was not issued until *March 10, 2004*, had not yet been decided. He claims that before Robinson, Indiana's appellate courts had held that IDOC, *not the trial courts*, were responsible for determining an offender's credit time. Kindred v. State, 771 N.E.2d 760, 763 (Ind. Ct. App. 2002) (holding that a "sentencing judge only has the authority to make recommendations with respect to good time allowances and cannot enter a binding order circumventing the statutory process for calculating credit time."). Plaintiff argues that, pursuant to Kindred, at the time he presented to IDOC following his sentencing in 2003, it was the usual and routine practice of IDOC to determine an offender's pre-sentence credit time.

Defendants reply that Plaintiff has completely misinterpreted the controlling law. They assert that Kindred addressed "good time credit" after sentencing, not credit for "actual time served" prior to sentencing. They further contend that Robinson did not change the state of Indiana law and that Plaintiff is simply speculating as to IDOC's practices before Robinson.

In our view, the parties' arguments regarding (1) the state of Indiana law in 2003 versus 2004 and (2) the difference between "actual days served" prior to sentencing and "good time credit" are

irrelevant. These arguments miss the real issue in this case, which is whether the defendants acted appropriately (or with deliberate indifference) in response to the sentencing documents received from the Jasper Circuit Court and Plaintiff's repeated requests to be credited the time that the Jasper Circuit Court had awarded him.

"All orders and judgments of courts must be complied with promptly," Maness v. Meyers, 419 U.S. 449, 458 (1975), and "[i]t is for the court of first instance to determine the question of the validity of the law. Howat v. Kansas, 258 U.S. 181, 190 (1922). Unless and until a court's decision "is reversed for error by orderly review, either by itself or a higher court, its orders based on its decision are to be respected, and disobedience of them is contempt of its lawful authority." Id. "If a person to whom a court directs an order believes that the order is incorrect[,] the remedy is to appeal [or take other appropriate action], but, absent a stay, he must comply promptly with the order pending appeal." Maness, 419 U.S. at 458. Thus, even if the defendants believed that Indiana law did not require them to calculate Plaintiff's credit time and that the order issued by the Jasper Circuit Court was wrong or contrary to law, they were not at liberty to overlook or disregard it.

### 2. A reasonable jury could find deliberate indifference on the part of all four defendants

Based on the record before us, and applying the three-part test referenced by the Seventh Circuit Court in Burke, 452 F.3d at 667, a reasonable jury could find that all four Defendants acted with deliberate indifference.

Clinton's affidavit establishes that Clinton read the Jasper Circuit Court's sentencing documents and knew that those documents directed IDOC to determine the credit that Plaintiff was due based on the actual number of days he spent in custody prior to sentencing together with any "good time credit" that he might have earned. Clinton's affidavit also establishes that Clinton knew

of the risk that Plaintiff might not receive such credit. Specifically, Clinton determined Plaintiff's projected release date without applying any such credit, told Plaintiff that he could not calculate the credit, and suggested that Plaintiff contact his criminal defense attorney or the sentencing court for help in resolving the problem. Although Clinton did take further action by faxing the Abstract of Judgment to his supervisor, a reasonable jury could find that merely faxing that document to someone else was an ineffectual way to handle the apparent problem. A reasonable jury could also find that Clinton's incorrect calculation of Plaintiff's projected release date, coupled with his failure to do anything other than fax the sentencing documents to his supervisor was a cause of Plaintiff's unjustified detention for a period of 471 days longer than the sentencing court imposed.

Similarly, a reasonable jury could find that Hurst was deliberately indifferent. Hurt's affidavit establishes that, having read the sentencing documents, he, too, had actual knowledge of the Jasper Circuit Court's directive to IDOC to determine Plaintiff's credit. His affidavit, however, does not establish that he did anything further, and, if he did nothing further, a reasonable jury could find that his failure to act under the circumstances was a cause of Plaintiff's unjustified detention of 471 days.

Knight and Wynn both argue that they have been named as defendants in this lawsuit solely because of their positions or titles within IDOC. They claim that they had no knowledge of or personal involvement in the handling of the issue of Plaintiff's credit time and argue that 42 U.S.C. § 1983 precludes *respondeat superior* liability. Plaintiff, however, offers evidence (his own testimony) that both men were personally involved. He states that he sent both men letters asking them to intervene and help him obtain the credit to which he was entitled. [Plaintiff's Dep., p. 16, l. 1 - 17, l. 17.]

Knight responds that if he had received a letter from Plaintiff, he would have given it to one

of his subordinates for handling. [Knight Aff. ¶ 5.] A reasonable jury could find that Knight's action was ineffectual under the circumstances and, therefore, was a cause of Plaintiff's unjustified detention of 471 days.

Wynn responds that IDOC contacted the Jasper Circuit Court to obtain further information in order to calculate Plaintiff's credit, but the Jasper Circuit Court never provided that information. [Wynn Aff. ¶ 15 - 16.] Notably, Wynn does not assert that he personally contacted the Jasper Circuit Court. He does not identify the individual who did, and he does not reference any documents memorializing this claimed contact. Thus, his affidavit is notable for what it does not say. Under these circumstances, it is unclear how Wynn can claim to have personal knowledge of the "fact" that IDOC contacted the Jasper Circuit Court. Nevertheless, a reasonable jury could find that if Plaintiff sent Wynn a letter and Wynn did not take appropriate action in response to that letter, Wynn's lack of response or ineffectual action was a cause of Plaintiff's unjustified detention of 471 days.

## IV. CONCLUSION

To the extent that Plaintiff's Fourteenth Amendment claims are encompassed within, co-extensive with, or duplicative of his Eighth Amendment claims, summary judgment is GRANTED in favor of Defendants and Plaintiff's Fourteenth Amendment claims are DISMISSED. Based on the record before us, however, Defendants have not established that they are entitled to summary judgment with respect to Plaintiff's Eighth Amendment claims. Accordingly, Defendants' Motion

for Summary Judgment is GRANTED IN PART AND DENIED IN PART.[8]

    IT IS SO ORDERED.

Date:   09/28/2012                                      _Sarah Evans Barker_

                                                                          SARAH EVANS BARKER, JUDGE
                                                                          United States District Court
                                                                          Southern District of Indiana

Copies to:

Electronically registered counsel of record

---

[8]   The Court has determined by accessing public records that Plaintiff has returned to IDOC on another conviction, the details of which we are unfamiliar; however, it occurs to us that there may be grounds on which the Attorney General could petition the court sentencing Plaintiff for his most recent conviction to review that sentence in light of prior error.